```
                 UNITED STATES DISTRICT COURT FOR THE
                       DISTRICT OF NEW HAMPSHIRE
```

New England Southern
Railroad Co.

    v.                              Civil No. 07-403-JL
                                     Opinion No. 2008 DNH 179
Boston and Maine Co.,
Springfield Terminal Railway Co.,
and Pan Am Railways, Inc.


**MEMORANDUM AND ORDER**

The plaintiff, New England Southern Railroad Co., brought this action against the defendants for allegedly failing to make over $430,000 in payments due under a lease agreement. The plaintiff invoked the court's jurisdiction under 28 U.S.C. §§ 1331 (federal question) and 1367 (supplemental jurisdiction), and various sections of the Interstate Commerce Commission Termination Act of 1995 (ICCTA).[1] Prior to answering the complaint, the defendants filed a joint motion to dismiss for lack of subject matter jurisdiction. See Fed. R. Civ. P. 12(b)(1). For the following reasons, the defendants' motion is granted.

---

[1] Pub. L. No. 104-88, 109 Stat. 803 (codified as scattered sections of U.S.C., including 49 U.S.C. §§ 10101-16106).

1

**I.     BACKGROUND**

This case involves the defendants' alleged non-payment of rail-service fees generated by the movement of freight traffic over a stretch of railway track owned by one of the defendants, the Boston and Maine Corporation (Boston and Maine), but leased to and serviced by the plaintiff. Beginning in 1985, the plaintiff, a rail carrier, leased certain lines of railroad and appurtenant facilities from Boston and Maine. The parties' lease agreement (1) authorized the plaintiff to use and operate rail cars on these lines, and (2) obligated the plaintiff to provide rail-service to, or interchange, freight traffic that moves over these lines. For its part, the lease agreement required that Boston and Maine (1) compensate the plaintiff for any rail-service it provided to cars on these lines, and (2) assign the plaintiff Boston and Maine's rights under "all sidetrack agreements and private vehicular crossing agreements."

Since the lease went into effect, the defendants--Boston and Maine and the Springfield Terminal Railways, subsidiary corporations of Pan Am Railways--moved freight traffic over the leased lines, thereby obligating the plaintiff to provide rail-service to these cars. Each month, the defendants provided the plaintiff with an accounting of rail-service compensation owed,

which, under the terms of their contract, the defendants were obligated to pay each month.

The plaintiff brought a four-count complaint against the defendants, alleging: (1) breach of contract, (2) quantum meruit, (3) unjust enrichment, and (4) deceptive and unfair trade practices in violation of N.H. Rev. Stat. Ann. § 358-A. The plaintiff alleges that, in the five months preceding the lawsuit, the defendants failed to make over $430,000 in rail-service payments, and erroneously calculated the rail-service compensation owed by the plaintiff. The plaintiff also alleges that, in further contravention of the lease, the defendants failed either to assign their rights under the relevant sidetrack agreements, or to "pay [the plaintiff] any revenue derived from" these agreements. The defendants have since moved to dismiss the complaint on the grounds that the court lacks subject matter jurisdiction.[2]

## II.  **APPLICABLE LEGAL STANDARD**

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute

---

[2] There is no diversity jurisdiction here because both the plaintiff and Boston and Maine are Delaware citizens.

. . . ." United States v. Coloian, 480 F.3d 47, 50 (1st Cir. 2007) (quoting Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994)).  "It is to be presumed that a cause [of action] lies outside this limited jurisdiction" and the burden lies with the plaintiff, as the party invoking the court's jurisdiction, to establish the contrary.  Kokkonen, 511 U.S. at 377 (internal citations omitted); see also Pejepscot Indus. Park v. Me. Cent. R.R., 215 F.3d 195, 200 (1st Cir. 2000).  "Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause."  Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94 (1998).

In reviewing a motion to dismiss on jurisdictional grounds, "[t]he court must construe the complaint liberally, treating all well-pleaded facts as true and indulging all reasonable inferences in favor of the plaintiff."  Skrizowski v. United States, 292 F. Supp. 2d 277, 280 (D.N.H. 2003).  Still, the complaint must allege a substantial claim arising under federal law, see Mich. S. R.R. Co. v. Branch & St. Joseph Counties Rail Users Ass'n, 287 F.3d 568, 573 (6th Cir. 2002), and the court may not base jurisdiction on unsupported conclusions or interpretations of law.  See Skrizowski, 292 F. Supp. 2d at 279.

**III. ANALYSIS**

Under 28 U.S.C. § 1331, "the district courts shall have original jurisdiction over all civil actions arising under the Constitution laws, or treaties of the United States." See Caterpillar, Inc. v. Williams, 482 U.S. 386, 392 (1987).  In determining whether an action arises under federal law, the court follows the well-pleaded complaint rule, which "provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint."  Id. at 392.

In an effort to meet its jurisdictional burden, the plaintiff alleged in its complaint that because a federal statute grants the Surface Transportation Board "jurisdiction over rates and practices relating to the use of freight cars by railroads," 49 U.S.C. § 10501(b), the plaintiff's claims necessarily arise under federal law.  The plaintiff has since revised its jurisdictional argument to state that its claims arise under 49 U.S.C. §§ 11121 (establishing safe and adequate car service criteria) and 11122 (authorizing the Board to set car hire compensation rates) of the ICCTA.  The plaintiff argues that, because the rail industry is federally regulated, and because federal law authorizes the Board to establish rail carrier car

compensation rates,[3] as the arguments go, jurisdiction lies in federal court.  These arguments ignore the jurisdiction-stripping provision of the ICCTA.  See 49 U.S.C. § 10501(b).

In 1995, Congress enacted the ICCTA, significantly reducing state and local regulation of the railroad industry.  See Maynard v. CSX Transp., Inc., 360 F. Supp. 2d 836, 839 (E.D. Ky. 2004).  As the First Circuit noted in analyzing the ICCTA, Congress abolished the Interstate Commerce Commission, significantly deregulated the railroad industry, and established the Surface Transportation Board to carry out its directives.  See Pejepscot, 215 F.3d at 197.  As part of this scheme, the ICCTA vests the Board with exclusive jurisdiction over transportation by rail carriers.

> The jurisdiction of the Board over -
>
> (1) transportation by rail carriers, and the remedies provided in this part with respect to rates, classifications, rules (including car service, interchange, and other operating rules), practices, routes, services, and facilities of such carriers;
>
>     . . . .
>
> is exclusive.

---

[3] See 49 U.S.C. § 11122 (statute authorizing the Board to establish "the compensation to be paid for the use of" railway cars); and 49 C.F.R. § 1033.1 (regulations setting forth the Board's car-hire rates).

49 U.S.C. § 10501(b)(emphasis added).  The plaintiffs do not dispute--indeed, they affirmatively argue--that their claims involve "transportation by rail carriers" within the meaning of § 10501(b)(1).

Instead, relying on Pejepscot, the plaintiff argues that this court has concurrent jurisdiction over their claims. Pejepscot recognized that despite the "exclusive" jurisdiction given to the Board by § 10501(b), other provisions of the ICCTA "strongly suggest that certain actions may be filed in federal district court--and that in some areas the [Board's] jurisdiction is concurrent, not exclusive."  Pejepscot, 215 F.3d at 201; see, e.g., 49 U.S.C. § 11704(a) (claim to enforce prior order of the Board); § 11704(c) (damages resulting from act or omission by rail carrier); § 11706 (losses under receipt or bill of lading).

In Pejepscot, the court was asked to decide whether § 10501(b) divested the district court of jurisdiction over claims brought under a provision of the ICCTA that expressly provides for federal causes of action.  See 215 F.3d at 197. Section 11704(c), the specific provision of the ICCTA invoked by the plaintiff in Pejepscot, plainly states that a person injured by an act or omission of a rail-carrier "may file a complaint with the Board . . . or bring a civil action . . . to enforce liability against a rail carrier."  49 U.S.C. § 11704(c)

7

(emphasis added). Resolving the tension between this provision and the ICCTA's grant of "exclusive" jurisdiction to the Board, the Court of Appeals concluded that "[v]iewing the language of the ICCTA in light of its legislative history and the evidence of practice under its predecessor, the ICA," the provision under which that plaintiff brought its claims (i.e., § 11704) provides for concurrent jurisdiction between the Board and the district courts. Pejepscot, 215 F.3d at 205.

The holding in Pejepscot, however, merely recognized federal court jurisdiction under § 11704, a provision of the ICCTA which expressly provides for it. Here, the plaintiff fails to identify any provision of the ICCTA--including §§ 10501, 11121, and 11122--which expressly confers jurisdiction like § 11704 does. Indeed, the only provision cited by the plaintiff that even addresses jurisdiction, § 10501, exclusively confers it on the Board. See 49 U.S.C. § 10501(b). There is nothing, therefore, in the specific provisions invoked by the plaintiff to divest the Board of its exclusive jurisdiction, or to create concurrent jurisdiction in both the Board and this court, over the plaintiff's claims. See Carroll v. United States, 354 U.S. 394, 399 (1957) (jurisdictional statutes must be read in light of "the

axiom that clear statutory mandate must exist to found jurisdiction").[4]

## IV. CONCLUSION

Because this court lacks subject matter jurisdiction over the plaintiff's complaint, the defendants' motion to dismiss (document no. 8) is granted, and those claim are dismissed. Insofar as the plaintiff argues that Count IV of its complaint does not fall within § 10501's grant of exclusive jurisdiction to the Board, the court declines to exercise supplemental jurisdiction.  See 28 U.S.C. § 1367(c); Picciotto v. Cont'l Cas. Co., 512 F.3d 9, 22 (1st Cir. 2008)("the supplemental jurisdiction statute does not apply [where] there is no civil action to which any additional claims may attach").  The clerk shall enter judgment accordingly and close the case.

---

[4] The court notes that the plaintiff's state-law claims may be subject to federal preemption.  See San Luis Central R.R. Co. v. Springfield Terminal Ry. Co., 369 F. Supp. 2d 172 (D. Mass. 2005); Engelhard Corp. v. Springfield Terminal Ry. Co., 193 F. Supp. 2d 385 (D. Mass. 2002); see also Pejepscot, 215 F.3d at 202 (noting, without deciding, that "[t]he last sentence of § 10501(b) plainly preempts state law").  But because there is no federal subject matter jurisdiction over these claims, the court does not reach that issue.

9

**SO ORDERED.**

_/s/ Joe Laplante_
Joseph N. Laplante
United States District Judge

Date:   September 30, 2008

cc:   Martin P. Honigberg, Esq.
      Kevin M. O'Shea, Esq.
      Michael J. Connolly, Esq.